UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 1:22-cr-00153-LEW |
| ) | |
| YARDLEY DAVIS, ) | |
| ) | |
| Defendant. ) | |

### ORDER ON DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

On December 15, 2022, Defendant Yardley Davis was indicted on one count of being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Davis now moves to suppress statements that he made to investigative agents on the ground that his Fifth Amendment rights were violated when agents continued their interrogation after Davis invoked his right to counsel. Def.'s Mot. to Supp. (ECF No. 35). Because Davis's Fifth Amendment rights were violated, his Motion to Suppress is GRANTED.

#### BACKGROUND

On December 26, 2021, Davis ran away from Maine law enforcement officers, who were seeking to execute an arrest warrant from Connecticut. The following morning, law enforcement found Davis in the woods near Lincoln, Maine. Having been outside in the cold for about twelve hours, Davis was transported to a hospital for medical care.

On December 29, Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Kevin Connelly and Maine State Fire Marshal's Office Investigator Edward Hastings went to interview Davis, who was still in the hospital. Davis was handcuffed to his hospital bed, and his room was guarded by law enforcement. Before speaking with Davis, Agent Connelly and Investigator Hastings spoke with hospital personnel and were told that Davis was lucid. Next, Agent Connelly and Investigator Hastings awoke Davis, introduced themselves, and explained that they wanted to ask questions. Agent Connelly then read Davis his *Miranda* rights, and Davis agreed to talk with the officers. Gov't's Ex. 2 at 2:18–4:6. After Davis answered that he came to Maine by himself in response to a question, Agent Connelly explained that it was a crime to lie to him. Agent Connelly asked Davis once again who he came to Maine with. In response, Davis requested a lawyer.[1] Agent Connelly asked, "You want a lawyer now? Is there a reason why you don't want to talk to us?" *Id.* at 6:8–9. Davis requested a lawyer again. *Id.* at 6:10. Agent Connelly responded, "Okay. So here is what I'm going to tell you. All right? I understand you've asked for a lawyer. That's fine. You're facing some really serious federal charges." *Id.* at 6:11–14. Davis asked, "For what?" *Id.* at 6:15. Agent Connelly explained, "Anything that my agency covers you basically violated: Molotov cocktails, firearms, running across state lines, attempted murder, kidnapping, a whole bunch of stuff." *Id.* at 6:18–22. He continued, "So when you talk to your lawyer, I would make sure that you get in touch with us as fast as you possibly can because I think you can clear up a lot of things for us." *Id.*

---

[1] Many of Davis's responses are, as the transcript reflects, inaudible. The parties do not dispute that Davis unambiguously asserted his right to counsel.

at 6:23–7:1.  Next, Davis recanted his request for a lawyer.  *Id.* at 8:1–3.  Since Davis had invoked his right to counsel, Agent Connelly said that he did not feel comfortable talking to Davis without giving him "some time to cool off," so Agent Connelly and Investigator Hastings left.  *Id.* at 9:2.

That evening, Davis asked Deputy Barrieau, who was guarding Davis's room, if a nurse could turn off the lights.  Gov't's Ex. 3.  Davis explained that he was going crazy thinking about what the officers told him.  He said that he had been sent up here for a mission, which he had failed, and that he would either die slow or fast in jail since people would be sent for him.  Davis also expressed concern about his four-year-old daughter.  In response, Deputy Barrieau explained that Davis should tell this to Agent Connelly, and he forwarded this information to Agent Connelly and Investigator Hastings.

On January 1, 2022, Agent Connelly and Investigator Hastings visited Davis, who was now in jail.  Davis told Investigator Hastings that he had not yet had an opportunity to speak with an attorney and that he did not want to talk to the officers.  Nonetheless, the back and forth continued for about half an hour and eventually Davis agreed to be *Mirandized* and talk with the officers.  Agent Connelly reminded Davis that he previously requested a lawyer and read Davis his *Miranda* rights, and Davis said that he understood each right.  Gov't's Ex. 4 at 35–36.  Davis now moves to suppress his statements during this interrogation.

## DISCUSSION

The Fifth Amendment of the United States Constitution provides that "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To safeguard the right against self-incrimination, the United States Supreme Court held in *Miranda v. United States* that a defendant's statements during a custodial interrogation are inadmissible during the prosecution's case in chief if the defendant was not advised of his *Miranda* rights and did not knowingly and intelligently waive his rights. 384 U.S. 436, 479 (1966). When a defendant invokes his right to counsel during a custodial interrogation, the defendant "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). *Edwards*'s rationale is that "once a suspect indicates that 'he is not capable of undergoing [custodial] questioning without advice of counsel,' 'any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the 'inherently compelling pressures' and" is "not the purely voluntary choice of the suspect." *Maryland v. Shatzer*, 559 U.S. 98, 104–05 (2010) (alteration in original) (quoting *Arizona v. Roberson*, 486 U.S. 675, 681 (1988)). The *Edwards* rule does not apply if there has been a break in custody lasting fourteen days or more. *Id.* at 110–11. For purposes of *Miranda*, a defendant is in custody if a "reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Howes v. Fields*, 565 U.S. 499, 509 (2012) (alteration in original) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).

In *Oregon v. Bradshaw*, the Supreme Court split 4-1-4 in deciding whether a defendant, who previously invoked his right to counsel, initiated conversation with police by asking, "Well, what is going to happen to me now?" 462 U.S. 1039, 1042 (1983) (plurality opinion). The plurality reasoned that a suspect initiates conversation with law enforcement when the suspect "evince[s] a willingness and a desire for a generalized discussion about the investigation." *Id.* at 1045–46. Having concluded that the defendant initiated communication with police, the plurality then analyzed whether, under the totality of the circumstances, the defendant knowingly and intelligently waived his right to counsel. *Id.* at 1046 (citing *Edwards*, 451 U.S. at 486 n.9). The four dissenting Justices agreed with the plurality's requirement that the suspect must "demonstrate a desire to discuss the subject matter of the investigation." *Id.* at 1055 (Marshall, J., dissenting). They disagreed, however, with the plurality's application of that rule to the case. *See id.* ("[U]nder the circumstances of this case, it is plain that respondent's only 'desire' was to find out where the police were going to take him."). Justice Powell concurred in the judgment, expressing that "[c]ourts should engage in more substantive inquiries than 'who said what first'" by instead evaluating whether a defendant knowingly and intelligently waived his rights to counsel. *Id.* at 1051 (Powell, J., concurring in the judgment).

Today, the admissibility of a defendant's statements during a custodial interrogation after the defendant invokes his right to counsel depends on who says what first. In *United States v. Ortiz*, the First Circuit concluded that *Edwards* was violated based on the "sequence of events." 177 F.3d 108, 109 (1st Cir. 1999). There, Ortiz was read his

5

*Miranda* rights, and he invoked his right to counsel. *Id.* The district court concluded that Ortiz "initiated conversation with the officers by inquiring about the charges against him" after he invoked his right to counsel. *Id.* The First Circuit reversed, reasoning that "[t]he uncontroverted testimony of Agent Navarro and Ortiz shows that *immediately* after reading Ortiz his *Miranda* rights, Agent Navarro asked Ortiz whether he wanted to cooperate. Ortiz stated that he did, and only then inquired about the charges against him." *Id.* Based on this sequence, the First Circuit concluded that the "officers thus reinitiated interrogation in violation of *Edwards*." *Id.* at 110 (citing *Minnick v. Mississippi*, 498 U.S. 146, 147 (1990) (stating that "once the accused requests counsel, officials may not reinitiate questioning 'until counsel has been made available' to him" (quoting *Edwards*, 451 U.S. at 484))). The First Circuit distinguished Ortiz's inquiry about the charges from *Bradshaw*, where the defendant made a similar inquiry, because "eight of the Justices still required that the defendant initiate a new conversation, and that did not occur in this case." *Id.*[2]

The parties agree that Davis unambiguously invoked his right to counsel during a custodial interrogation. What the law requires is clear: The interrogation must cease "until counsel has been made available to" Davis "unless [Davis] himself initiate[d] further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484–

---

[2] The First Circuit has repeatedly explained that the defendant—not the officers—must initiate a conversation with the officers before an interrogation may continue. *See, e.g.*, *United States v. Carpentino*, 948 F.3d 10, 21–22 (1st Cir. 2020) ("To qualify for this exception, the suspect must initiate this further communication without coercion or probing.").

85. The parties disagree about whether the officers ceased their interrogation after Davis requested a lawyer and whether Davis subsequently initiated conversation with the officers.

The record resolves both disputes. After being asked for a second time who Davis came to Maine with, he invoked his right to counsel. Gov't's Ex. 2 at 6:7. At this point, the interrogation should have ended. Instead, however, Agent Connelly asked, "You want a lawyer now? Is there a reason why you don't want to talk to us?" *Id.* at 6:8–9. Agent Connelly's further "express questioning" as to why Davis did not want to talk to the officers was interrogatory, in violation of the *Edwards* rule. *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). This is supported by the *Ortiz* Court's holding that the officers continued their interrogation by asking Ortiz whether he wanted to cooperate with them. 117 F.3d at 110. This continued interrogation violated the requirement that "once the accused requests counsel, officials may not reinitiate questioning 'until counsel has been made available' to him" or the accused himself initiates further communication with the officers. *Minnick*, 498 U.S. at 147 (quoting *Edwards*, 451 U.S. at 484–85).

The Government argues that the subsequent interrogation on January 1 was lawful because Davis recanted his request for counsel. This argument, however, ignores the dispositive sequence of events and contradicts the bright-line *Edwards* rule, which is "designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights." *Michigan v. Harvey*, 494 U.S. 344, 350 (1990). Davis's attempted recantation occurred *after* he invoked his right to counsel for the second time in response to Agent Connelly asking why he did not want to talk to them. Gov't's Ex. 2 at

6:8–10.  By then, *Edwards* was already violated, and Agent Connelly's further statements about the serious crimes under investigation and why Davis should contact him soon after consulting with an attorney further continued the interrogation.  *See id.* at 6:13–7:4.  These statements, while not express questions, amounted to further interrogation because they were "reasonably likely to elicit an incriminating response from the suspect" concerning any of the crimes that Agent Connelly mentioned.[3]  *Innis*, 446 U.S. at 301 (footnote omitted).  Because *Edwards* was violated (not once, but twice) before Davis recanted his request for a lawyer, his recantation was ineffective since it was tainted by Agent Connelly badgering him into waiving his previously asserted right to counsel.  *See Harvey*, 494 U.S. at 350.

Having concluded that the officers violated *Edwards* by continuing the interrogation after Davis invoked his right to counsel, I must next consider whether Davis's statements

---

[3] The Government appeals to the Ninth Circuit's decision in *Shedelbower v. Estelle* to argue that Agent Connelly's statement that Davis faced serious charges did not constitute an interrogation for purposes of *Miranda*.  885 F.2d 570 (9th Cir. 1989).  In that case, Shedelbower was a suspect in a murder and rape investigation, and he was taken to a sheriff's office, where he was interrogated.  *Id.* at 571.  During the interrogation, Shedelbower invoked his right to counsel.  *Id.*  In response, officers told Shedelbower that he was under arrest and explained that if he wanted an attorney immediately, he would have to call a private attorney.  *Id.* at 571–72.  Otherwise, Shedelbower would have to wait until the arraignment the next morning when a public defender would be appointed.  *Id.* at 572.  As the officers gathered their materials to leave, one of them told Shedelbower that a co-conspirator was in custody and that the rape victim identified Shedelbower's picture as one of the men who raped her and murdered the victim.  *Id.* at 572.  Shedelbower then said that he wanted to talk about the case and that he did not need an attorney.  *Id.*  The Ninth Circuit held that Shedelbower's subsequent statements were admissible because he initiated further conversation with law enforcement.  The court reasoned that there was no *Edwards* violation because the officer's lies about the co-conspirator and the victim identifying Shedelbower were not an interrogation since the lies "did not call for nor elicit an incriminating response" and because they did not "encourage Shedelbower to make some spontaneous incriminating remark."  *Id.* at 573.  This holding is questionable.  Arguably, the officer's lies were designed to elicit an incriminating response from Shedelbower and pressure him into talking to them without counsel.  Here, even if Agent Connelly's statements about Davis facing serious charges were not interrogatory, there was still a violation of *Edwards* when Agent Connelly asked, after Davis already invoked his right to counsel, "Is there a reason why you don't want to talk to us?"  Gov't's Ex. 2 at 6:8–9.

made during the subsequent interrogation on January 1 are admissible. An *Edwards* violation establishes a "presumption of involuntariness." *Shatzer*, 559 U.S. at 105. This presumption exists unless there has been a fourteen-day break in *Miranda* custody. *See id.* at 110. Here, only three days passed between Davis's invocation of his right to counsel and his second interrogation, where Davis explained that he was unable to speak with a lawyer. Gov't's Ex. 4 at 3. Thus, the *Edwards* presumption of involuntariness applies, rendering Davis's statements inadmissible during the prosecution's case in chief.

## CONCLUSION

For the foregoing reasons, Davis's Motion to Suppress (ECF No. 35) is GRANTED.

Dated this 15th day of November, 2023.

                                                                    /s/ Lance E. Walker
                                                                    UNITED STATES DISTRICT JUDGE